IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| v. | ) Criminal No. 23-254 |
| | ) |
| WENDELL SLADE | ) |

**Opinion and Order on Motion to Dismiss Indictment**

Defendant Wendell Slade is charged in an Indictment with one count of possession of a firearm and ammunition by a convicted felon, in violation of 18 U.S.C. § 922(g)(1). Presently before the Court is Mr. Slade's Motion to Dismiss Indictment. ECF No. 61. The government has filed a Response to the Motion, to which Mr. Slade has filed a Reply. ECF Nos. 72, 81. Mr. Slade argues that § 922(g)(1) is an unconstitutional regulation of the right to possess firearms in violation of the Second Amendment to the United States Constitution.

**I.      Background**

Mr. Slade is charged with one count of possessing a firearm and ammunition, while knowing that he had previously been convicted of a crime punishable by imprisonment for a term exceeding one year, in violation of 18 U.S.C. § 922(g)(1). Section 922(g)(1) of Title 18 provides that "[i]t shall be unlawful for any person-(1) who has been convicted in any court of, a crime punishable by imprisonment for a term exceeding one year . . . to . . . possess in or affecting commerce, any firearm or ammunition; . . . ." 18 U.S.C. § 922(g)(1). The Indictment alleges that Mr. Slade has seven prior qualifying state convictions, six in the Court of Common Pleas of Allegheny County, Pennsylvania, and one in the Court of Common Pleas of Westmoreland County, Pennsylvania.

On May 12, 1993, in the Court of Common Pleas of Allegheny County, Mr. Slade pleaded guilty to four of the identified prior convictions. At criminal case number CP-02-CR-12134-1992, Mr. Slade was convicted of Manufacture, Delivery, or Possession with Intent to Manufacture or Deliver a Controlled Substance, in violation of 35 Pa. Cons. Stat. § 780-113(a)(30). At criminal case number CP-02-CR-14175-1992, Mr. Slade was convicted of Receiving Stolen Property, in violation of 18 Pa. Cons. Stat. § 3925; Carrying a Firearm Without a License, in violation of 18 Pa. Cons. Stat. § 6106; and Criminal Conspiracy – Receiving Stolen Property, in violation of 18 Pa. Cons. Stat. § 903.

On February 20, 2002, in the Court of Common Pleas of Allegheny County, at criminal case number CP-02-CR-04553-2001, Mr. Slade pleaded guilty to two felony counts of Manufacture, Delivery, or Possession with Intent to Manufacture or Deliver a Controlled Substance, in violation of 35 Pa. Cons. Stat. § 780-113(a)(30).

On March 21, 2002, in the Court of Common Pleas of Westmoreland County, at criminal case number CP-65-CR-02168-2001, Mr. Slade pleaded guilty to Manufacture, Delivery, or Possession with Intent to Manufacture or Deliver a Controlled Substance, in violation of 35 Pa. Cons. Stat. § 780-113(a)(30).

On February 13, 2013, in the Court of Common Pleas of Allegheny County, at criminal case number CP-02-CR-02286-2013, Mr. Slade pleaded guilty to Manufacture, Delivery, or Possession with Intent to Manufacture or Deliver a Controlled Substance, in violation of 35 Pa. Cons. Stat. § 780-113(a)(30).

The facts supporting the present § 922(g)(1) charge arose from the execution of a Pennsylvania state search warrant for a house Mr. Slade was residing in, and was also allegedly engaging in illegal drug distribution. Upon execution of the search warrant, law enforcement

recovered a firearm (which had been reported stolen), ammunition, cocaine, marijuana, and methamphetamine, drug paraphernalia, and $700 in United States currency ($200 of which was used by a confidential informant). Mr. Slade reportedly admitted that he owned the firearm.

**II.    Arguments**

Mr. Slade argues that § 922(g)(1) is unconstitutional as applied to him, and that § 922(g)(1) is unconstitutional on its face. Next, he argues that 922(g)(1) is unconstitutionally vague. Finally, Mr. Slade argues that § 922(g)(1) is an unconstitutional violation of the Constitution's Commerce Clause. Mr. Slade acknowledges that his Commerce Clause argument is foreclosed by precedent, but he asserts it for preservation purposes.

Mr. Slade supports his arguments by primarily relying on the Supreme Court's decisions in *New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 597 U.S. 1 (2022), *United States v. Rahimi*, 602 U.S. 680 (2024), the Third Circuit's *en banc* decision in *Range v. Att'y Gen. United States*, 124 F.4th 218 (3d Cir. 2024), and *Pitsilides v. Barr*, 128 F.4th 203 (3d Cir. 2025)[1].

In opposition to Mr. Slade's "as applied" challenge, the government presents several independent arguments. First, the government argues that Mr. Slade has failed to demonstrate that he possessed the firearm and ammunition for self-defense, which is the only legitimate Second Amendment purpose recognized by the Supreme Court. Second, the government argues that Mr. Slade's prior criminal history places him in a category where the Constitution permits barring him from possessing firearms and ammunition under § 922(g)(1). Finally, the government argues that its historical analysis of governmental restrictions on possessing firearms demonstrates that § 922(g)(1) is consistent with historical restrictions on possession of firearms and ammunition by people who have prior qualifying firearm convictions. Finally, as to Mr.

---

[1] For preservation purposes, the defense maintains that *Pitsilides* departed from the applicable Supreme Court framework and was wrongly decided. Def. Mot. to Dismiss at 2, 10.

3

Slade's facial challenge, the government argues that the challenge fails because he cannot show that § 922(g)(1) is unconstitutional in all circumstances.

### III. Second Amendment Case Law

The Second Amendment of the United States Constitution provides that "[a] well regulated Militia, being necessary to the security of a free State, the right of people to keep and bear Arms, shall not be infringed." The *Bruen* decision follows the Supreme Court's prior landmark Second Amendment decisions of *District of Columbia v. Heller*, 554 U.S. 570 (2008) and *McDonald v. Chicago*, 561 U.S. 742 (2010). In *Heller* and *McDonald*, the Supreme Court "recognized that the Second and Fourteenth Amendments protect the right of an ordinary, law-abiding citizen to possess a handgun in the home for self-defense." *Bruen*, 597 U.S. at 8-9. In *Bruen*, the Supreme Court held, "consistent with *Heller* and *McDonald*, that the Second and Fourteenth Amendments protect an individual's right to carry a handgun for self-defense outside the home." *Id.* at 9. The *Bruen* Court held that, New York City's requirement that a citizen show "proper cause" to carry a handgun in public, violates the Constitution, because it "prevents law-abiding citizens with ordinary self-defense needs from exercising their right to keep and bear arms." *Id.* at 71.

Relevant to the instant Motion to Dismiss, the *Bruen* Court held that the standard for a Second Amendment analysis is as follows: "When the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects the conduct." *Id.* at 24. If a Court determines that the conduct being regulated is presumptively protected by the Second Amendment, then to justify the regulation, "the government must affirmatively prove that its firearms regulation is part of the historical tradition that delimits the outer bounds of the right to keep and bear arms." *Id.* at 19. "Only if a firearm regulation is consistent with this Nation's

4

historical tradition may a court conclude that the individual's conduct falls outside the Second Amendment's protection." *Id.* at 17.

In *Rahimi*, the Supreme Court clarified the methodology for resolving Second Amendment challenges under *Bruen*. *Rahimi* reaffirmed that the Second Amendment requires firearm regulations to be consistent with "historical tradition." 602 U.S. at 690-91. With respect to the challenged statue at issue in *Rahimi*, 18 U.S.C. § 922(g)(8), which prohibits firearm possession by individuals subject to a domestic violence restraining order, the Court concluded that an "individual found by a court to pose a credible threat to the physical safety of another may be temporarily disarmed consistent with the Second Amendment." *Id.* at 702. The Supreme Court explained that "our Nation's firearm laws have included provisions preventing individuals who threaten physical harm to others from misusing firearms." *Id.* at 690. The Supreme Court found that § 922(g)(8) is constitutional, because it "is 'relevantly similar' to those founding era regimes in both why and how it burdens the Second Amendment right." *Id.* at 682 (quoting *Bruen*, 597 U.S. at 29).

In *Range II*, a declaratory judgment proceeding, the *en banc* Third Circuit Court addressed the constitutionality of 18 U.S.C. § 922(g)(1), as applied to the plaintiff, Bryan Range. Section 922(g)(1) barred Mr. Range from possessing firearms, because he had previously "pleaded guilty in the Court of Common Pleas of Lancaster County to one count of making a false statement to obtain food stamps in violation of Pennsylvania law." *Range*, 124 F.4th at 222-23 (*citing* 62 Pa. Stat. Ann. § 481(a)). Mr. Range sought "a declaration that § 922(g)(1) violates the Second Amendment as applied to him" and an "injunction prohibiting the law's enforcement against him." *Id.* at 223. "Range assert[ed] that but for § 922(g)(1), he would 'for sure' purchase another deer-hunting rifle and 'maybe a shotgun' for self-defense at home." *Id.*

5

The *Range* Court applied *Bruen* and *Rahimi* to determine whether § 922(g)(1) was constitutional as applied to Bryan Range. First, the Court concluded that "*Heller* and its progeny lead us to conclude that Bryan Range remains among 'the people' [protected by the Second Amendment] despite his 1995 false statement conviction." *Id.* at 228. Next, the *Range* Court found that "'the Constitution presumptively protects" Bryan Range's proposed conduct, "to possess a rifle to hunt and a shotgun to defend himself at home." *Id.* Therefore, the burden shifted to the government to show that "§ 922(g)(1), as applied to [Mr. Range], 'is part of the historical tradition that delimits the outer bounds of the right to keep and bear arms.'" *Id.* (quoting *Bruen*, 597 U.S. at 19). After reviewing the government's historical evidence and arguments, the *Range* Court concluded that "that the Government has not shown that the principles underlying the Nation's historical tradition of firearms regulation support depriving Range of his Second Amendment right to possess a firearm." *Range*, 124 F.4th at 232 (citing *Rahimi*, 597 U.S. at 17 and *Bruen*, 597 U.S. at 17). The *Range* Court succinctly summarized its holding, stating that, "[b]ecause the Government has not shown that our Republic has a longstanding history and tradition of depriving people like Range of their firearms, § 922(g)(1) cannot constitutionally strip him of his Second Amendment rights." *Id.* The Court described its decision as "narrow," addressing the constitutionality of § 922(g)(1) only as applied to Bryan Range.[2] *Id.*

*Pitsilides*, like *Range*, was a declaratory judgment proceeding in which a panel of the Circuit Court addressed the constitutionality of § 922(g)(1), as applied to the plaintiff, George Pitsilides, who sought "a declaratory judgment entitling him to prospectively possess a firearm."

---

[2] Notably, the Third Circuit observed that the government had not tried to justify disarming Mr. Range on the ground that he was physically dangerous. *Range*, 124 F.4th at 230 (explaining that the Government had "no evidence that [Mr. Range] pose[d] a physical danger to others or that food-stamp fraud is closely associated with physical danger").

6

*Pitsilides*, 128 F.4th at 205. Section 922(g)(1) barred Mr. Pitsilides from possessing firearms, because he had previously been convicted, in Pennsylvania, of one count of criminal conspiracy to commit pool selling and bookmaking and two counts of pool selling and bookmaking. Later, he was also convicted in Virginia of two counts of owning a place where illegal gambling is occurring. Among other principles, the *Pitsilides* Court explained that "while *Rahimi* and *Range II* did not purport to comprehensively define the metes and bounds of justifiable burdens on the Second Amendment right, they do, at a minimum, show that disarmament is justified as long as a felon continues to present a special danger of misusing firearms." *Pitsilides*, 128 F.4th at 210 (citation and alteration omitted). Mr. Pitsilides argued that his gambling offenses, on their face, do not provide evidence that he is a threat. *Id.* at 212. The Court, however, explained that, although such offenses "may not involve inherently violent conduct, they may nonetheless, depending on the context and circumstances, involve conduct that endangers the physical safety of others. That assessment necessarily requires individualized factual findings." *Id.* at 212, 213. The Court concluded that the record lacked sufficient evidence to determine whether Mr. Pitsilides posed a danger to the physical safety of others and remanded to the District Court for further proceedings. *Id.* at 213. In addition, in *United States v. Harris*, a Third Circuit panel remanded to the District Court for an individualized assessment of defendant's dangerousness, here defendant was a marijuana user who unlawfully purchased and possessed firearms in violation of 18 U.S.C. § 922(g)(3). 144 F.4th 154, 164 (3d Cir. 2025), The *Harris* Court found that "§ 922(g)(3) temporarily and constitutionally restricts the gun rights of drug users only as long as they "present a special danger of misusing firearms." *Id,* (quoting *Pitsilides*, 128 F.4th at 211).

## IV. Discussion

### A. As Applied Challenge

An as applied challenge contends that a law's "application to a particular person under particular circumstances deprived that person of a constitutional right." *United States v. Marcavage*, 609 F.3d 264, 273 (3d Cir. 2010) (citation omitted). In light of the *Range* decision, it is clear that Mr. Slade is one of the "people" protected by the Second Amendment, despite having a prior qualifying conviction. Next, the Court determines whether "the Second Amendment's plain text covers an individual's conduct." *Bruen*, 597 U.S. at 24. If the plain text does not cover the person's conduct, then the regulation at issue does not violate the Second Amendment. However, if the plain text does cover such conduct, then "the Constitution presumptively protects the conduct," and the burden shifts to the government to justify the constitutionality of the firearm regulation. *Id.*

#### 1. Defendant's Conduct is Not Protected

Mr. Slade appears to contend that he desires to possess firearms and ammunition as protected by the Second Amendment's guarantee of the right of the people to keep and bear arms. However, his actual conduct is the focus for analysis, and his conduct at issue is not protected under the plain text of the Second Amendment. Here, Mr. Slade was arrested for possessing a stolen firearm and ammunition, while resident in a house that contained evidence of illegal drug trafficking. Law enforcement and the public have a safety interest in ensuring that persons not permitted to possess firearms, do not in fact have such firearms on their person. Mr. Slade's conduct of unlawfully possessing a stolen firearm and ammunition, when he knew he was prohibited from possessing firearms and ammunition based on his prior offenses, establishes Mr. Slade as a person who is dangerous to the safety of the public and is disruptive to the orderly

functioning of society. In addition, Mr. Slade's illegal drug distribution convictions further support that he poses a physical danger to others, as such activity is inherently dangerous. *United States v. Williams*, 113 F.4th 637, 659 (6th Cir. 2024) (drug trafficking, while "not always involv[ing] an immediate and direct threat of violence against a particular person, may "nonetheless pose a significant threat of danger" and "often leads to violence"). *United States v. Strong*, 775 F.2d 504, 506 (3d Cir. 1985) ("Congress intended to equate traffic in drugs with a danger to the community"); and see USSG § 2D1.1(b)(1)., comment. (n. 11(A) "(enhancement for weapon possession . . . reflects the increased danger of violence when drug traffickers possess weapons"). Under these circumstances, the Second Amendment's plain text does not protect Mr. Slade's conduct. *Rahimi*, 602 U.S. at 691; *Bruen*, 597 U.S. at 24. Therefore, Mr. Slade's conduct is not presumptively protected by the Constitution. No further analysis is necessary. The government has no further burden to justify the § 922(g)(1) firearm regulation as applied to Mr. Slade. Accordingly, because Mr. Slade's conduct was not protected by the plain text of the Second Amendment, his as applied challenge fails.

### 2. Even if the Conduct was Protected, the Government Demonstrates Sufficient Historical Analogues

Even if Mr. Slade's conduct were protected by the Second Amendment, his as applied challenge still fails, because as applied to him, § 922(g)(1) corresponds with "part of the historical tradition that delimits the outer bounds of the right to keep and bear arms." *Bruen,* 597 U.S. at 19. As explained in *Bruen*, and re-affirmed in *Rahimi*, the government need only "identify a well-established and representative historical *analogue*, not a historical *twin.*" *Id.* at 30 (emphasis in original). "'To be compatible with the Second Amendment, regulations targeting longstanding problems must be 'distinctly similar' to a historical analogue." *Range*, 124 F.4th at 228 (citing *Rahimi*, 602 U.S. at 692 (quoting *Bruen*, 597 U.S. at 29)). "[E]ven if a modern-day

9

regulation is not a dead ringer for historical precursors, it still may be analogous enough to pass constitutional muster." *Bruen,* 597 U.S. at 30. In determining whether historical and modern firearms regulations are similar enough, the Court inquiries into "how and why the regulations burden a law-abiding citizen's right to armed self-defense.'" *Bruen*, 597 U.S. at 29.

With such guidelines in mind, the Court concludes that the government has presented sufficiently similar historical analogues to § 922(g)(1). The relevant historical analogous firearm regulations, cited by the government, disarmed persons deemed to be dangerous, not trusted to obey the law, or who were disruptive, or a threat, to society. The purpose of such historical firearm regulations was to ensure the orderly functioning of society and to protect the public. In addition, Mr. Slade's prior conviction for Carrying a Firearm Without a License is "meaningfully different from" Bryan Range's crime of dishonesty and George Pitsilides illegal gambling crimes, in that Mr. Slade's conviction represents "a failure to comply with a state law regulating the possession and use of deadly weapons," which is "at least arguably dangerous." *United States v. Dorsey*, 105 F.4th 526, 532 (3d Cir, 2024).

The regulated conduct, purposes, and objectives of the historical firearm analogues, when compared to the regulated conduct, purposes, and objectives of § 922(g)(1), as applied to Mr. Slade, clearly reflect requisite similarity to establish § 922(g)(1)'s constitutional compliance with the Second Amendment. Mr. Slade's relevant qualifying convictions – carrying a firearm without a license and multiple illegal drug convictions - also demonstrate that he is a threat to public safety and to the orderly functioning of society. While Mr. Slade's prior firearm conviction may not appear, at first blush, to be the type of conduct demonstrating dangerousness, the simple failure to obtain a license to carry his firearm *did* result in Mr. Slade acquiring a qualifying conviction. Moreover, setting aside his failure to obtain a firearm license, Mr. Slade's history of

10

engaging in illegal drug distribution is indicative of one who is a threat to public safety and to the orderly functioning of society. Further, Mr. Slade's present offense conduct, of unlawfully possessing a stolen firearm and ammunition, sufficiently places him in the category of persons who were historically properly disarmed to ensure the orderly functioning of society and to protect the public. Section 922(g)(1), as applied to Mr. Slade, "is consistent with this Nation's historical tradition of firearm regulation." *Bruen*, 597 U.S. at 17. As such, § 922(g)(1) is constitutional as applied to Mr. Slade. Mr. Slade's "as applied" challenge to § 922(g)(1) fails.

### B. Facial Challenge

Mr. Slade next argues that § 922(g)(1) is unconstitutional on its face. "A facial attack tests a law's constitutionality based on its text alone and does not consider the facts or circumstances of a particular case." *Marcavage*, 609 F.3d at 273 (citation omitted). "A party asserting a facial challenge 'must establish that no set of circumstances exists under which the Act would be valid.'" *United States v. Mitchell*, 652 F.3d 387, 405 (3d Cir. 2011) (*en banc*) (quoting *United States v. Salerno*, 481 U.S. 739, 745 (1987)).

The government argues that the facial challenge fails, because Mr. Slade is unable to show that § 922(g)(1) is unconstitutional in *all* circumstances. The Court agrees. Initially, the above decision, finding that § 922(g)(1) is constitutional as applied to this Defendant, establishes that § 922(g)(1) is not unconstitutional in all cases. While Mr. Slade relies upon the *Range* Court's finding, that § 922(g)(1) was unconstitutional as applied to Bryan Range, such holding was expressly narrow and limited to Bryan Range's prior fraud conviction and his proposed prospective protected firearm conduct. The *Range* Court did not find or even suggest that § 922(g)(1) is unconstitutional in all cases. Accordingly, Mr. Slade's facial challenge to § 922(g)(1) fails.

### C. Vagueness

Mr. Slade's vagueness challenge also fails. "A statute is void on vagueness grounds if it (1) 'fails to provide people of ordinary intelligence a reasonable opportunity to understand what conduct it prohibits'; or (2) 'authorizes or even encourages arbitrary and discriminatory enforcement.'" *United States v. Fullmer*, 584 F.3d 132, 152 (3d Cir. 2009) (quoting *United States v. Stevens*, 533 F.3d 218, 249 (3d Cir.2008)). The statute is clear in delineating the conduct that bars a person from possessing a firearm or ammunition in violation of § 922(g)(1). A person who has been convicted of a crime is able to understand whether the conviction for such crime is punishable by imprisonment for more than one year; and therefore, knows that such conviction makes it a crime for him to possess a firearm or ammunition in violation of § 922(g)(1). Criminal statutes clearly define crimes and prescribe corresponding penalties. Information that a prior conviction carries a potential punishment of imprisonment for more than one year, is readily available. Where the penalty for a crime of conviction includes punishment for a term of imprisonment of more than one year, then § 922(g)(1) bars that person from possession of a firearm or ammunition. Moreover, § 922(g)(1) requires the government to prove that the defendant actually *knew* that he had been convicted of a crime punishable by imprisonment for a term exceeding one year. Such a *mens rea* element, "makes it less likely that a defendant will be convicted for an action that he or she committed by mistake." *Fullmer*, 584 F.3d at 152 (citing *Gonzales v. Carhart*, 550 U.S. 124, 149, 127 (2007)). Thus, the Defendant's vagueness challenge to § 922(g)(1) fails.

### D. Commerce Clause

Finally, Mr. Slade's argument that § 922(g)(1) is an unconstitutional violation of the Constitution's Commerce Clause is denied, as the argument is foreclosed by binding precedent. *See United States v. Singletary*, 268 F.3d 196, 204 (3d Cir. 2001).

### V. Conclusion

For the reasons explained above, Mr. Slade's argument, that 18 U.S.C. § 922(g)(1) is an unconstitutional regulation of the right to possess firearms in violation of the Second Amendment, fails. Accordingly, his Motion to Dismiss the Indictment, charging him with possession of a firearm and ammunition by a convicted felon, in violation of 18 U.S.C. § 922(g)(1), will be denied.

### ORDER

AND NOW, this 10th day of October 2025, for the reasons stated above, Wendell Slade's Motion to Dismiss the Indictment, ECF No. 61, is DENIED.

                                                   __s/*Marilyn J. Horan*
                                                   Marilyn J. Horan
                                                   United States District Court Judge