IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| v. | ) Criminal No. 23-254 |
| | ) |
| WENDELL SLADE | ) |

**Opinion and Order on Motion to Dismiss or Strike "Special Findings"
Related to the Armed Career Criminal Act, 18 U.S.C. § 924(e), From the Indictment**

Defendant Wendell Slade is charged in an Indictment with one count of possession of a firearm and ammunition by a convicted felon, in violation of 18 U.S.C. § 922(g)(1). ECF No. 3. A person who violates § 922(g) is potentially subject to the enhanced penalties of the Armed Career Criminal Act (ACCA), which imposes a fifteen-year mandatory minimum sentence on a defendant who has at least three prior state or federal convictions for serious drug offenses that were committed on different occasions. 18 U.S.C. § 924(e)(1). The Indictment in this case includes a "Notice of Special Findings" section in which the government sets forth alleged serious drug offenses committed by Mr. Slade on occasions different from one another. *Id.* at 3-4. Mr. Slade disagrees that he falls under the ACCA, and he has filed a Motion to Dismiss or Strike "Special Findings" Related to the Armed Career Criminal Act, 18 U.S.C. § 924(e). ECF No. 60. Prior to the government filings its' Response to the Motion, Mr. Slade also filed a Supplement to his Motion to Dismiss or Strike. ECF No. 67. Thereafter, the government filed a Response to the Motion, to which Mr. Slade has filed a Reply. ECF Nos. 73, 80.

I.   Background

Mr. Slade is charged with one count of possessing a firearm and ammunition, while knowing that he had previously been convicted of a crime punishable by imprisonment for a

term exceeding one year, in violation of 18 U.S.C. § 922(g)(1). The government contends that Mr. Slade qualifies for the Armed Career Criminal Act sentencing enhancement based upon his prior state convictions for "serious drug offenses." As set forth in the Notice of Special Findings, the alleged prior "serious drug offenses" committed by Mr. Slade are as follows:

> 1) Manufacture, Delivery, or Possession with Intent to Manufacture or Deliver a Controlled Substance, on or about May 12, 1993, at Counts One and Two of case number CP-02-CR-12134-1992, in the Court of Common Pleas, County of Allegheny, Commonwealth of Pennsylvania (offenses committed on or about June 26, 1992);
>
> 2) Manufacture, Delivery, or Possession with Intent to Manufacture or Deliver a Controlled Substance, on or about February 20, 2002, at Counts One and Two of case number CP-02-CR-04553-2001, in the Court of Common Pleas, County of Allegheny, Commonwealth of Pennsylvania (offenses committed on or about August 30, 2000);
>
> 3) Manufacture, Delivery, or Possession with Intent to Manufacture or Deliver a Controlled Substance, on or about February 20, 2002, at Counts Four and Five of case number CP-02-CR-04553-2001, in the Court of Common Pleas, County of Allegheny, Commonwealth of Pennsylvania (offenses committed on or about September 14, 2000);
>
> 4) Manufacture, Delivery, or Possession with Intent to Manufacture or Deliver a Controlled Substance, on or about March 21, 2002, at Two and Three of case number CP-65-CR-02168-2001, in the Court of Common Pleas, County of Westmoreland, Commonwealth of Pennsylvania (offenses committed on or about February 28, 2001);
>
> 5) Manufacture, Delivery, or Possession with Intent to Manufacture or Deliver a Controlled Substance, on or about February 13, 2013, at Counts One and Three of case number CP-02-CR-02286-2013, in the Court of Common Pleas, County of Allegheny, Commonwealth of Pennsylvania (offenses committed on or about November 5, 2012).

Indictment, ECF No. 3. All of the convictions were for violations of 35 Pa. Cons. Stat. § 780-113(a)(30). In all but one of the offenses, the controlled substance involved was

cocaine. In the other offense, which occurred on November 5, 2012, the controlled substance was heroin.[1]

## II.   Applicable Law

In order to determine if a prior conviction is a "serious drug offense" under ACCA, courts employ either the "categorial approach" or the "modified categorical approach." *Descamps v. United States*, 570 U.S. 254, 257 (2013). The categorical approach requires courts to look "only to the statutory definitions of the prior offenses," not the "facts underlying the prior convictions," *Taylor v. United States*, 495 U.S. 575, 600 (1990), nor "the label a State assigns to a crime." *Mathis v. United States*, 579 U.S. 500, 509 (2016).

As the Pennsylvania "statute of conviction (§ 780-113(a)(30)) is 'divisible,' *United States v. Brown*, 47 F.4th 147, 150 n.1 (3d Cir. 2022), meaning it 'contains alternative elements,' we apply the 'modified categorical approach.'" *Bell*, 2024 WL 1892283, *3 (quoting *United States v. Aviles*, 938 F.3d 503, 511 (3d Cir. 2019)).[2] "Under this approach, the court 'looks to a limited class of documents (for example, the indictment, jury instructions, or plea agreement and colloquy) to determine what crime, with what elements, a defendant was convicted of.'" *Bell*, 2024 WL 1892283, *3 (quoting *Mathis*, 579 U.S. at 505). "'The court can then compare that crime' to the federal criteria." *Id.* In this case, the only potential open element the Court must

---

[1] Because to qualify as an armed career criminal, a defendant must have three prior convictions, Mr. Slade and the government agree that a determination of whether the heroin offense is a serious drug offense is not necessary. A ruling limited to the cocaine offenses will either result in none of the prior cocaine convictions counting as a predicate offense – meaning ACCA does not apply, or all of the prior cocaine convictions are serious drug offenses – which is sufficient to conclude that ACCA does apply. The government further indicates that it "consents to the striking from the Notice of Special Findings the reference to Count One in Paragraph 5 relative to the defendant's state conviction at CP-02-CR-02286-2013," which involved heroin. Gov. Resp. at 15. The government's consent is premised upon the Court declining to determine "the breadth of the definition of heroin in Pennsylvania." *Id.* The Court declines to address the heroin conviction under ACCA and will only address the prior cocaine convictions.

[2] *See also United States v. Miller*, 480 F. Supp. 3d 614, 618 (M.D. Pa. 2020) ("Section 780-113(a)(30) is divisible by drug type").

determine is which controlled substance was involved in each of defendant's convictions. Here, there is no dispute that Mr. Slade's prior convictions involved cocaine.[3]

As stated, ACCA increases the mandatory minimum sentence a defendant faces to fifteen years if the defendant violated 18 U.S.C. § 922(g) and has at least three prior convictions for serious drug offenses that were committed on different occasions. 18 U.S.C. § 924(e)(1). Relevant to a defendant's prior state convictions, a "serious drug offense" is defined as "an offense under State law, involving manufacturing, distributing, or possessing with intent to manufacture or distribute, a controlled substance (as defined in section 102 of the Controlled Substances Act (21 U.S.C. § 802)), for which a maximum term of imprisonment of ten years or more is prescribed by law." 18 U.S.C. § 924(e)(2)(A)(ii).

To qualify as an ACCA predicate offense, "the drugs on the federal and state schedules" must match at the time "the state drug offense was committed." *Brown v. United States*, 602 U.S. 101, 119 (2024). More precisely, "the elements of the statute of conviction must be 'the same as, or narrower than, those of the generic offense.'" *United States v. Bell*, 2024 WL 1892283, *3 (M.D. Pa. 2024) (quoting *United States v. Henderson*, 841 F.3d 623, 627 (3d Cir. 2016)). "Importantly, a state crime may not qualify as a 'serious drug offense'—and thus may not serve as an ACCA predicate—if its elements are different from or broader than the generic version of that offense." *Brown*, 47 F.4th at 149 (citing *Henderson*, 841 F.3d at 627). "Put another way, if the state law governing a particular offense criminalizes more conduct than its generic federal counterpart, then a state conviction for that offense may not count toward the ACCA's requirement of three prior offenses." *Brown*, 47 F.4th at 149 (citing *Descamps v. United States*, 570 U.S. 254, 257–58 (2013); *Moncrieffe v. Holder*, 569 U.S. 184, 190 (2013)).

---

[3] The defense has provided the underlying Criminal Information's for each conviction. Exhibits A-D, ECF Nos. 60-1 through 60-4.

4

The Court has considered the government's argument, that "whether the defendant's prior convictions qualify as ACCA predicates is premature and should not be ruled upon until after a finding of guilty either by trial or guilty plea." Gov. Resp. 3. The government included the Notice of Special Findings section in the Indictment in order to comply with the Supreme Court's holding that, "any fact that increases the mandatory minimum is an "element" that must be submitted to the jury,' and "found beyond a reasonable doubt." *Alleyne v. United States*, 570 U.S. 99, 103, 108 (2013). The ACCA enhancement, if applicable, increases Mr. Slade's statutory mandatory minimum sentence to fifteen years. As such, the increase in sentencing exposure is unlike a post-conviction determination increasing a defendant's offense level based upon factors specified in the Sentencing Guidelines. Such increases may result in an increased advisory guideline sentence, but they will not result in an increased mandatory minimum term of imprisonment. Mr. Slade's present challenge presents an issue of law to be determined by the court: whether his prior convictions are "serious drug offenses." That issue may be determined pretrial, or it may be determined after a conviction. To address Mr. Slade's challenge prior to a determination of guilt does not prejudice the government. Therefore, as a practical matter and in the interest of justice, the Court concludes that addressing Mr. Slade's challenge to the application of ACCA on a pretrial motion is warranted.

### III.  Discussion

Mr. Slade argues that his prior Pennsylvania drug trafficking convictions for cocaine, under 35 Pa. Cons. Stat. § 780-113(a)(30), are not "serious drug offenses," because the Pennsylvania statute covers a broader range of conduct than the conduct prescribed by the Federal Controlled Substances Act. He argues that Pennsylvania's definition covers a broader range of types of cocaine than does the federal counterpart definition of "cocaine." Mr. Slade

5

compares Pennsylvania's definition to the federal definition, because, to qualify as an ACCA predicate offense, "the drugs on the federal and state schedules" must match at the time "the state drug offense was committed." *Brown v. United States*, 602 U.S. 101, 119 (2024).

Pennsylvania's definition of cocaine, at the time of each of Mr. Slade's prior convictions, was as follows:

> (1) **Schedule II**-- . . . The following controlled substances are included in this schedule:
>
> (i) Any of the following substances, of any quantity, except those narcotics specifically excepted or listed in other schedules, whether produced directly or indirectly by extraction from substances of vegetable origin, or independently by means of chemical synthesis, or by combination of extraction and chemical synthesis:
>
> . . .
>
>    4. Coca leaves and any salt, compound, derivative, or preparation of coca leaves, and any salt, compound, derivative, or preparation thereof which is chemically equivalent or identical with any of these substances, but shall not include decocainized coca leaves or extracts of coca leaves, which extracts do not contain cocaine or ecgonine.

35 Pa. Cons. Stat. § 780-104(2)(i)(4). The analogous statutory federal definition of cocaine was as follows:

> **Schedule II**
>
> (a) Unless specifically excepted or unless listed in another schedule, any of the following substances whether produced directly or indirectly by extraction from substances of vegetable origin, or independently by means of chemical synthesis, or by a combination of extraction and chemical synthesis:
>
> . . .
>
> (4) coca leaves, except coca leaves and extracts of coca leaves from which cocaine, ecgonine, and derivatives of ecgonine or their salts have been removed; cocaine, its salts, optical and geometric isomers, and salts of isomers; ecgonine, its derivatives, their salts, isomers, and salts of isomers; or any compound, mixture, or preparation which contains any quantity of any of the substances referred to in this paragraph.

6

21 U.S.C. § 812(a)(4). The Code of Federal Regulations provides the following relevant definition:

> Coca leaves (9040) and any salt, compound, derivative or preparation of coca leaves (including cocaine (9041) and ecgonine (9180) and their salts, isomers, derivatives and salts of isomers and derivatives), and any salt, compound, derivative, or preparation thereof which is chemically equivalent or identical with any of these substances, except that the substances shall not include:
>
> (i) Decocainized coca leaves or extraction of coca leaves, which extractions do not contain cocaine or ecgonine; or
>
> (ii) [$^{123}$I]oflupane[4]; or
>
> (iii) FP-CIT.

21 C.F.R. 1308.12(b)(4).

Mr. Slade argues that none of his prior cocaine convictions qualify as a serious drug offense, because the Pennsylvania statute of conviction he was convicted under is not a categorical match to its federal counterpart. He argues that none of his prior cocaine convictions qualify as a serious drug offense, because Pennsylvania law criminalizes all isomers of cocaine, while federal law only criminalizes optical and geometric isomers.

Mr. Slade argues that the Pennsylvania definition includes all variants of isomers by its reference to the inclusion of any derivatives: "Coca leaves and *any . . . derivative*, or preparation of coca leaves, and *any . . . derivative*, or preparation thereof which is chemically equivalent or identical with any of these substances." 35 Pa. Cons. Stat. § 780-104(2)(i)(4) (emphasis added). He argues that Pennsylvania does not "place any limit on the type of isomers included in its definition of cocaine or cocaine." Def. Mot. at 7. In contrast, Mr. Slade argues that the analogous

---

[4] The federal definition did not exclude [$^{123}$I]oflupane until September 2015. The post-September 2015 exclusion does not apply to Mr. Slade's prior convictions as all of his prior convictions occurred before September 2015. *Brown v. United States*, 602 U.S. 101, 123 (2024) ("a state drug conviction counts as an ACCA predicate if it involved a drug on the federal schedules *at the time of that [state] offense*") (emphasis added).

federal definition only criminalizes optical and geometric isomers. He supports his position by citing the "federal definition of 'isomer,' which includes only the 'optical or geometric' isomers in the case of cocaine, but extends to the 'optical, positional, [and] geometric' isomers of other controlled substances, such as hallucinogens." Def. Mot. at 9 (quoting 21 U.S.C. § 802(14) and citing 21 C.F.R. § 1300.01(b); 21 C.F.R. § 1308.11(d) (defining hallucinogens to include its "optical, positional, or geometric" isomers (emphasis added)). Therefore, Mr. Slade argues that the Pennsylvania statute is broader than the federal statute, because Pennsylvania criminalizes all isomers of cocaine; and thus, his prior convictions cannot serve as predicate offenses for armed career criminal purposes.

It is clear on its face that the Pennsylvania definition of cocaine covers a wider range of conduct than the federal definition, which does not cover certain isomers. The federal definition "includes only stereoisomers – optical and geometric – in its definition of cocaine; but includes certain constitutional isomers in its definitions of other drugs." *United States v. Minter*, 80 F.4th 406, 410 (2d Cir. 2023) (citing 21 C.F.R. § 1308.11(d) (defining hallucinogens to include its "optical, positional, or geometric" isomers. The Pennsylvania definition of cocaine, however, is not so limited with respect to the exclusion of certain types of isomers. Pennsylvania covers all types of isomers; and is therefore broader than the federal statute.

With respect to the criminalization, or not, of all types of isomers of cocaine, the government argues that the Pennsylvania statue does not, in fact, cover all types of isomers. This conclusion depends upon a statutory interpretation that seems broad and unnecessary. The Court is not convinced, in the first place, that the categorical or modified categorical approach permits a court to delve into statutory construction of a state's criminal code, or to compare Pennsylvania's statute with other state's statutes, when the categorical comparison results in a

8

clear answer. Of course, the comparative federal law is clear in limiting the definition of cocaine isomers to only optical and geometric isomers. The plain task for the court is to compare a single state law with its federal counterpart, to "examine whether the elements of the state crime are different from or broader than the generic federal version of that crime." *Baskerville*, No. 1:19-CR-0033, 2022 WL 4536126, at *2. "[I]t is clear on the face of these statutes that Pennsylvania's is broader; someone could be charged with possessing a non-optical isomer of [cocaine] under Pennsylvania law but not under federal law." *United States v. Myrick*, No. CR 19-354, 2023 WL 2351693, at *4 (E.D. Pa. Mar. 2, 2023) (addressing heroin statutes). Finally, "the plain language of the state law makes clear that Pennsylvania officials are authorized to prosecute in the event that [any isomer of cocaine] is trafficked illegally, no matter the likelihood of that occurring". *Baskerville*, No. 1:19-CR-0033, 2022 WL 4536126, at *4 (addressing the exclusion of [$^{123}$]Ioflupane from the federal definition).

Finally, the government argues that Mr. Slade cannot overcome the application of the "realistic probability" test. Gov. Resp. at 13 (citing *Gonzales v. Duenas-Alvarez*, 549 U.S. 183, 193 (2007)). The government argues that Mr. Slade must demonstrate that there is a realistic probability that Pennsylvania would actually prosecute someone for possession of cocaine's optical or geometric isomers, or for possession of a non-federal isomer of cocaine. Several other courts addressing this argument have concluded that the realistic probability test is not a requirement. *Salmoran v. Att'y Gen. U.S.*, 909 F.3d 73, 7817 (3d Cir. 2018) ('where the elements of the crime of conviction are not the same as the elements of the generic federal offense ... we believe the realistic probability language ... is simply not meant to apply"); *Myrick*, No. CR 19-354, 2023 WL 2351693, at *10 (same); *Bell*, 2024 WL 1892283, *3 ("it matters not whether there is a realistic probability that non-optical isomers would form the basis of a conviction, for

9

Pennsylvania law facially allows such a prosecution"); *Baskerville*, *4 ("the application of the realistic probability test has not been required in this Circuit in this context—where a comparison of the plain language of the state and federal statutes establishes that the state statute criminalizes more conduct than the federal statute"); and *United States v. Kraft*, No. 1:20-CR-221, 2025 WL 1804974, at *4 (M.D. Pa. June 30, 2025) ("because Pennsylvania law 'plainly encompasses more conduct than its federal counterpart,' [the defendant] bears no such burden" to apply the realistic probability test" (quoting *Salmoran*, 909 F.3d at 82). The Court agrees with the several Courts that have concluded the realistic probability test should not be applied in the present circumstances.

Accordingly, the court finds that Mr. Slade's prior convictions under Pennsylvania law, for manufacture, delivery, or possession with intent to manufacture or deliver cocaine, are not "serious drug offenses" under the ACCA.

IV.   **Whether to Dismiss, or Strike, the "Notice of Special Findings"**

Next, Mr. Slade moves to dismiss, or strike, from the Indictment, the "Notice of Special Findings." He argues that the Special Findings should either be dismissed, pursuant to Rule 12(b)(1), or stricken pursuant to Rule 7(d). Because the Court concludes, as a matter of law, that the Notice of Special Findings fails to allege at least three "serious drug offenses," as defined in 18 U.S.C. § 924(e)(2)(A), the Notice of Special Findings does not support a determination that Mr. Slade qualifies for a sentencing enhancement under the ACCA. With the Court's ruling that the prior convictions are not serious drug offenses, the Notice of Special Findings is irrelevant. Therefore, the Notice will be stricken from the Indictment.

Under Federal Rule of Criminal Procedure 7(d), "the court may strike surplusage from the indictment or information." Fed. R. Crim. Proc. 7(d). "'This rule introduces a means of

protecting the defendant against immaterial or irrelevant allegations in an indictment or information, which may, however, be prejudicial.'" *United States v. Hedgepeth*, 434 F.3d 609, 612 (3d Cir. 2006) (quoting Fed. R. Crim. Proc. 7(d) Advisory Committee's Note). The "court may strike surplusage from the indictment or information when it is both irrelevant (or immaterial) and prejudicial." *Id.* Applying the Rule 7(d) standard, the Notice of Special Findings is properly stricken from the Indictment. As stated, none of the material in the Notice is relevant to support a conviction. The Notice is prejudicial, as Mr. Slade is not subject to a sentencing enhancement under ACCA, and that is the sole purpose of the Notice. To include in the Indictment such material would prejudice Mr. Slade. Accordingly, Mr. Slade's Motion to Strike the Notice of Special Findings will be granted, and the Notice of Special Findings shall be stricken.

## V.    Conclusion

Mr. Slade's prior cocaine trafficking convictions under 35 Pa. Cons. Stat. § 780-113(a)(30) do not categorically meet the criterion that the prior offenses involved a "controlled substance" as defined by the federal Controlled Substances Act. The relevant federal Controlled Substance Act definition only criminalizes optical and geometric isomers of cocaine, whereas Pennsylvania criminalizes all isomers of cocaine. Therefore, Mr. Slade is not subject to the fifteen-year mandatory minimum sentence pursuant to the ACCA. The Court will Strike the Notice of Special Findings. An appropriate Order follows.

## ORDER

AND NOW, this 22nd day of October 2025, for the reasons stated above, the Court finds that Wendell Slade's prior Pennsylvania state convictions for Manufacture, Delivery, or Possession with Intent to Manufacture or Deliver cocaine, in violation of 35 Pa. Cons. Stat. § 780-113(a)(30), are not "serious drug offenses" under 18 U.S.C. § 924(e).[5]

IT IS FURTHER ORDERED that, as a result of the above finding, Wendell Slade's Motion to Strike "Special Findings" Related to the Armed Career Criminal Act, 18 U.S.C. § 924(e), ECF No. 60, is GRANTED. The Notice of Special Findings is hereby STRICKEN from the Indictment.

The Motion to Dismiss "Special Findings" Related to the Armed Career Criminal Act, 18 U.S.C. § 924(e), ECF No. 60, is denied as moot.

Trial in this matter will be scheduled to begin with jury selection on November 17, 2025. A video status conference is set for October 29, 2025 at 9:00 AM.

                                                             s/*Marilyn J. Horan*
                                                             Marilyn J. Horan
                                                             United States District Court Judge

---

[5] The Court's rulings do not express any opinion as to the applicability of the United States Sentencing Guidelines with respect to Mr. Slade's prior convictions.